Your Honor, it is sad that we are still speaking about the passing from Edmund C. Bolden, who was on the 3rd. Yes, we'll move on to the 3rd case and have the 2nd case heard after the 3rd case. Case number 13-4397, Richard B. Bolden. Edmall v. City of Euclid. Edmall, oral argument not guilty. 15 minutes per side. Sends the charge to the attorney. Good morning, Your Honors. Good morning. May it please the courts, counsel, my name is Brian Carr and I represent the appellants, Samir Bolden, Brandon Martin, and their respective parents in this matter. We're here, as this court knows, I'd like to reserve 5 minutes for rebuttal. Judge Warren, thank you. We are here due the district court's grant of summary judgment in what I believe is a very important and presidential setting case. As we're here on a summary judgment grant, this court is well aware that the review is de novo. Before this court are the very important civil rights of juveniles. There's very little in my research precedent out there. But again, it's a very important issue. And the main issue I think that comes down to is when does a juvenile lose his or her rights to file a civil rights lawsuit? That I believe was the main issue that drove the entire district court opinion. Is the ability of a juvenile to file a civil rights lawsuit, is it eliminated if they enter a juvenile diversion program when they enter a plea? And in juvenile court, the plea is never guilty, not guilty. It's always true or not true. Is it when the juvenile may be found delinquent? What occurs when a juvenile goes through the process, whether it's a trial or a diversion, is not found delinquent? What occurs when the juvenile's case is ultimately dismissed? We heard that argument in the case just before mine. What happens when there's no plea and no finding? Here, I believe that the trial court held the appellants to really an impossible test, an impossible exercise. On the one hand, we have one of the appellants who went through a juvenile diversion program. Not a juvenile court diversion program, but a City of Euclid Police Department juvenile diversion program. This is Martin, correct? Yes, Judge Moore, this is Mr. Martin. He went through this diversion program and lost his right to file a civil rights lawsuit according to the district court. Mr. Bolden fought his charges, went through a juvenile court proceeding, a hearing. The case was dismissed. He was found not to be delinquent and because of some, in my argument, my opinion, wrote or surplusage in a magistrate's decision, lost his right to file a civil rights lawsuit. I query how this can be possible. How can this be equitable or constitutional? I suppose that your opponent will argue that if they wanted to defend their innocence, they should have appealed or not taken the diversion program in Martin's case. But could Bolden have appealed the order? Your Honor, I thank you for your question. I know that is going to be the argument that I'm going to hear in a number of moments. I believe I have sufficiently and adequately responded to that argument that Bolden could not have appealed for a couple of reasons. We have a magistrate's decision that found him not to be delinquent and dismissed the case with prejudice, sealed the record. What would have to be done from his perspective if he knew a civil rights filing was in the future and was concerned about that language about probable cause being found, first he would have to, this juvenile or his parents, spend time and money to engage counsel to order the transcript, have the court reporter print up the transcript, would have to file objections to that magistrate's decision, would then have to see what the juvenile court judge would do. In all likelihood, that magistrate's decision would be affirmed. Why? Because the juvenile's case was dismissed. He was found not to be delinquent. No harm, no foul, I think, would have been the finding by the juvenile court judge.  The juvenile, through his parents, would then have to spend more money engaging an attorney and filing an appeal to the court of appeals. Why I think the precedent that I have found from this circuit supports my position that that would have not been viable or an obligation on this juvenile is because this court has stated that the law does not require the doing of a futile act, an irrelevant act, or an act that's going to be a, quote, waste of money. And I believe that those case citations are in my reply brief and not my principal merit brief. When it comes down to it, that's what we would be dealing with here on Bolden's case. Bolden's case, where he was ultimately found not to be delinquent and the charges were dismissed by the juvenile court, that would have been a futile act and an irrelevant act appealing, what I believe is simply standard language in the Cuyahoga County Juvenile Court when a magistrate wants to find a juvenile not to be delinquent. Why do they have the language probable cause was found for the filing of the complaint? Judge Moore, all I can guess is that when the magistrate heard the testimony, unless it's simply her standard language, then she put it in there for some reason, I don't know. Because what we have, and I'm sure this court has looked at the briefs, the facts underlying the stop, detention, arrest, and treatment of these juveniles by this officer was worse than repugnant and horrific. I don't understand really what was in the magistrate's mind of the juvenile court because we have got juveniles who had a story. The important question today is what would you have this court do with that statement? Do you need us to ignore it in order to rule for you? I'm sorry, Judge, I didn't mean to interrupt you. I think this court should absolutely ignore it. How could we ignore it? How do you suggest we ignore it? I suggest you can and should ignore it for a couple of reasons. First, this is a juvenile court proceeding, which is a completely different environment than an adult court proceeding. So I think we have to really know that the juvenile court proceeding is a horse of a different color, and so we need to keep that in the back of our minds, is that we're not dealing with adults who are knowingly, voluntarily going through a criminal process. Here we've got a juvenile who... Magistrates are judges. I'm sorry? Magistrate. I don't think my thing works. Magistrates are adults, and the writing came from the magistrate. Oh, absolutely. What I'm saying is that the juvenile court arena is different, so that's one reason why I think we need to or this court should look at these kinds of orders that say probable cause determined with a different kind of eye. Did Golden have a lawyer? He did. In the juvenile court? He did. And one of my notes indicates that the dismissal of the complaint against Bolden was under juvenile rule 29F2D, and I believe that that requires the allegations of the complaint, indictment, or information to be admitted or proven. Is that my wrong? Your Honor, that's exactly why I think that there's confusion, and this court should ignore that probable cause statement is because what occurred here when Bolden put on his case, it was ultimately found not to be delinquent, and the case was dismissed. And that goes to, I'm kind of jumping on what happened with the last case. But it says the complaint is dismissed pursuant to juvenile rule 29F2D. And then my notes say that that rule requires the allegations of the complaint, indictment, or information to be admitted or proven, and I asked if that's wrong. Am I misreading the rule or am I in the wrong spot? I think that's what the rule says, Judge Moore. Okay, so then why isn't this order of the magistrate a finding that the allegations of the complaint, which was criminal trespass, right, are proven? But it's in the best interest of the youth and the community that the complaint is dismissed with prejudice. Because I think, and I'm going to be jumping on what happened in the case before us, this court looks to what was the ultimate outcome, the ultimate result for the accused. And here it was an outright dismissal. How could a juvenile go on to prove or complain about his civil rights violation in the federal courts? He's ultimately found to be not delinquent. He's got to engage in... Was he found to be not delinquent? Yes. Okay, well, Judge Moore points out just now that it was a diversion situation under this rule. He was diverted. Bolden, who went through the juvenile process, wasn't diverted. My understanding is that the magistrate wrote a decision finding probable cause, but under this specific rule determined that he was not found delinquent and the charges were dismissed. That was the ultimate resolution of that juvenile proceeding. So it's because the idea in juvenile court is to recognize that the person is a kid and that there should be non-criminal results for that kind of a person. So what about Martin didn't go to trial, but I thought there was the statement that Martin made in front of, I thought it was a magistrate, that he put his foot on the property and that that was sort of like a condition in order to enter the diversion program. I see my time is up. Can I respond? Yes, please. Thank you. Your Honor, I believe that was Martin's deposition testimony, is that in order to get into the diversion and get the charges dismissed, he was told by, I don't know if it was a magistrate or simply a court diversion employee, that, look, you have to make some kind of admission or else you can't go in this program. And the testimony was that, yeah, that's what he said to this court personnel to get into the diversion program just to get on with his life because they didn't have the funds, the parents didn't have the funds to engage counsel to contest these allegations. And I don't want to go further because I don't want to interrupt my rebuttal time, but thank you. Thank you. May it please the Court. My name is Frank Skeldone, and I represent the City of Euclid and Officer Doyle. Beginning with the language of the order regarding Mr. Bolden, the juvenile court, in fact, found against Mr. Bolden, going off Judge Cook, your observation, that it's under Juvenile Rule 29F2D. And there it gives the juvenile court judge the leeway to find that the charge of criminal trespass was established or admitted but can still dismiss the complaint if the dismissal is in the best interests of the child. And that's exactly what occurred here. So the finding of no probable cause certainly goes, is in perfect accord with that. And the issue of the inability to appeal, I really don't follow that argument because there is a provision starting, because it was a magistrate's order under Ohio law, you have 14 days to object. So you don't even really have to necessarily take an appeal at that stage. But why would a juvenile object if what the order says is the court, therefore, finds that the youth is not delinquent? So there's not going to be any punishment, right? Correct. And the youth is found not delinquent. The complaint is dismissed with prejudice because that's in the best interest of the youth and the community. So isn't this, in effect, rendered non-appealable? What sane juvenile would appeal to the higher power, whatever the judge is? Well, I think at this stage it's a magistrate's ruling, so it still has to be approved by the juvenile court judge. So at that point, and mind you, why would a juvenile appeal from that? Well, Mr. Bolden is taking issue now with the finding that there was probable cause. He was represented by counsel. Oh, Bolden was represented by counsel in front of the magistrate? Correct. There was a hearing on this, and there were facts and witnesses, and that's how the magistrate came to the conclusion to issuing this order. So, I mean, it's really a legal bar, because what happened here is you have the magistrate's decision. They could object to that finding of probable cause, but no objection was made for whatever reason. The reason to do it would be to preserve the right to bring the claim now. Yeah, and I apologize for not closing that loop there, but that's exactly. I mean, the counsel's there to give that advice, and certainly it has significance, but there was no objection, and under Ohio law, and even juvenile law or general magistrate's law, if you haven't made a specific objection, you've effectively waived your ability to take an appeal, and here, of course, there was no appeal that was taken. With regard to Mr. Martin, it's a little bit more straightforward in the sense that in open court he admitted to the charges against him, and, again, this is the criminal trespass charges. Martin, not only that, you have the testimony in the record supporting that of his testimony, but also his mother's testimony, and you have the record. And his admission was in open court that he put one foot on the property of the police officer? Correct, that he trespassed on the. And for some reason I'm recalling that there was fairly consistent denial by Martin of that, and then he was basically pushed by the hearing officer, whoever that may be, to say that he had put one foot on so he could be accepted into the diversion program because you had to admit guilt in order to be accepted into the diversion program. You have to admit guilt to be in the diversion program, and that is at page ID number 1485, and that is answers to the interrogatories or admissions. Again, he was represented, in my understanding, he was represented by counsel, the same counsel here. He had his parent there. So as far as, I mean, he knew the consequences of, and the benefits, in this case, of admitting that he trespassed. Could you address the excessive force issues, in particular vis-à-vis Martin? Absolutely. We know under the Fourth Amendment the Supreme Court has long recognized to make an arrest some degree of coercion or some degree of force. It's just inherent in that ability to make an arrest. Here you have consistent testimony of Plaintiff Martin not listening to the officer's commands to stop and going into his pocket to make a phone call. You have Martin's own testimony on that. You also have the corroborating evidence testimony of Bolden, and that's page ID number 420 to 421. And you have Doyle's own testimony there, so it's consistent. Here, the actions that he, the officer took, after all that occurred, he took the hands and brought Plaintiff Martin to the ground, never letting him go, and then applied the cuffs to him. The only complaint that Mr. Martin had was that he had a scratch on his leg that did not bleed. And other than that, the trial court's finding that there was inadequate evidence to establish excessive force I think has to be affirmed under these circumstances. Furthermore, under... So are you suggesting that the excessive force claim depends on there being physical injuries? Is that something that's required for there to be excessive force? Certainly every one that I've ever seen, there has to be some non-de minimis injury. But I'm just viewing it, I think, in the totality of the circumstances. You have a standard practice of the takedown. You have, there's nothing... I thought there was a question that's raised by your opponent about the takedown itself, about the pushing him into the ground. I think that's more, with due respect, I think that's more argument. And I think when the record is reviewed, and again, it's the testimony of everyone involved, it was a pretty standard takedown, the hands behind the back, the hand on the neck, and then lowered to the ground, not thrown, never let go at any time. And as I said, there was the sum total of the injury that he claimed was a scratch that did not bleed. Martin said that Doyle put his knee on Martin's face and head. Yeah, and I don't mean to leave anything out. He did have his knee on his back. I don't recall knee on his head, but in any event, I mean, it was pretty, I'm unaware of that being anything but standard practice and how the cuffs would be applied. And furthermore, our argument that we asserted at the trial court, and again, on appeal with qualified immunity, I believe provides another layer of protection because there's no establishment of that procedure, and the takedown would violate clearly established law or procedure. Well, isn't it clearly established? If the kids were on the sidewalk, they were never on the property, as they say, what force, I mean, any force would be excessive under those circumstances? Certainly, if those were the circumstances. And aren't we obliged to accept that as fact? Well, here I think it goes back, it reverts back to the admissions and the conviction that occurred at the juvenile proceeding. Because again, remember, there was an admission by Plaintiff Martin that he did trespass, that he was on Doyle's property. And with regard to Bolden, he lost at the juvenile proceedings on the issue of criminal trespass. But let's accept one foot on the property. Does that justify getting tackled and handcuffed and dragged down to the station, all of that? Would you say that's a reasonable level of force? Well, I think that, again, I mean, again, if he was convicted, both of them for criminal trespassing. So in the general sense, does one foot on somebody's property, that in and of itself, does that mean you're cuffed and dragged down to the station? I would say no. But here you have an establishment of criminal trespass. You have a plaintiff, specifically Plaintiff Martin. Plaintiff Bolden didn't have, you know, he complied with all the officer's orders, but Plaintiff Martin did not. And inherent in the ability to secure the scene and to make the arrest, he can use that amount of force. It's a reasonable amount of force, and the techniques that were used are reasonable as well. And there's been no demonstration that there's been a violation of clearly established law. Again, there's a Monell claim. That claim, you know, if there's no constitutional violation, there can be no Monell claim. There certainly was no deliberate indifference established in this record. If you recall, the personnel file was put into the record. Every time that there was a complaint, a citizen's complaint, it was responded to. Unless there are any additional questions, I would ask the court to affirm the trial court's decision. Thank you. Thank you very much. Your Honors, may I please the court? I know I have very limited time. First, with regard to the juvenile court proceedings, the procedure is, after a magistrate's decision, in order to further address the order, magistrate's decision, one would have to incur the fees and costs to produce the transcript of the whole hearing and present that to the judge to opine on. Again, the possibility or the likelihood of a juvenile appealing or objecting to a magistrate's decision and then further to a court of appeals for a positive outcome where cases are dismissed, the charges are dismissed, simply makes no sense. So that's the process. It would be objecting to the magistrate's decision. Does that really give you then a free pass? You just sort of say, okay, there's this finding here. We don't agree with it. We'll challenge it later on. Well, I don't think, Your Honor, that that finding is appealable. I mean, we've got an order dismissing this charge against this juvenile. And so to compel a juvenile to appeal a positive, successful order I think would be an undue burden on this juvenile. And I think the threat or the very real possibility could be when juvenile courts are faced with these types of issues, they can make this finding of probable cause, dismiss the charges and find the child not delinquent, knowing that they've successfully eliminated any potential juvenile from filing a civil rights action unless that juvenile could possibly spend the money to order the transcript, object to the judge, then take it to the court of appeals if the judge does not reverse that quote-unquote finding. Can you address the excessive force claim? I think that, yes, Judge Moore, thank you. It's not often where, in response to a request for a personnel file for an officer, that a plaintiff's counsel is provided with stacks of documents regarding the history of a violence-abusive officer, and that's exactly what we received. What was the excessive force with respect to Martin? With Martin only? The excessive force was slapping his hand, getting him down on the ground, after handcuffing him, putting him on his stomach, putting his knee on his back, putting his... Now, your opponent says this is standard practice. Well, for this officer it absolutely was if you would look at his personnel file. What's the film he's saying is standard practice of the city of Euclid? I would love to see the citation in the record to that effect because there is none. There absolutely is none. Was there any injury to your client? There were bumps and bruises, nothing that he went to the hospital for, absolutely not. I would not be up here saying that. The record says a scratch with no bleeding. I believe that is. You don't quarrel with the record, of course. I'm sorry? You do not quarrel with the record. Absolutely not, absolutely not. So is there a case law that says that we judge an excessive force claim not by the extent of the injuries but by something else? Is there some case that you would point us to to support your position? Judge Warren, the cases that I cited in my brief are the only cases that I have found to support my excessive force argument. I want to turn my attention to one of the questions that Judge Cook had raised. In talking about the diversion program and even with the juvenile court proceedings, there's case authority, and I'm looking at Crockett v. The City of Ashtabula, where one is allowed to bring a civil rights claim when he or she would go in on a criminal matter and plead no contest. That does not preclude one from filing a civil rights action. And as we all know, a no contest plea, which is not available in a juvenile court proceeding, is admission to the facts as alleged but not to guilt. And I would analogize it to if we're allowing adults to go in and plead no contest and then turn around and be able to file a civil rights lawsuit, how can we preclude juveniles who are ultimately successful at the juvenile court level and going through a diversion program, how can we preclude them from enforcing their civil rights? How do they lose those? Martin, who was not represented, by the way, at the juvenile diversion program, just to set the record straight, Martin was successful, had all charges dismissed, so was Bolden, all charges dismissed. They both achieved success and should have been able to prosecute their civil rights violations. I would ask that the court reverse the trial court's grant of summary judgment, and thank you for your time this morning. Thank you. Thank you both for your argument, and the case will be submitted.